## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

In Re: Northstarr Builders, LLC

Case no. 24-32419
Ch.  11
Judge:  Joel D. Applebaum

Debtor.

_____/

## FIRST AMENDED
## PLAN OF REORGANIZATION

Northstarr Builders, LLC (the "Debtor") proposes this First Amended Plan of Reorganization (the "Plan") through its undersigned counsel. This proposed First Amended Plan of Reorganization is subject to Bankruptcy Court approval and is for the resolution of outstanding claims against and interests in the Debtor pursuant to Chapter 11 of Title 11 of the United States Code (the "Code").

### A. Description of the Debtor

The Debtor is a Michigan Limited Liability Company in good standing. It operates a construction business in Burton, Michigan. The business is operated by its sole shareholder Marty Johnson.

### B. Causes of the Bankruptcy Filing

The Debtor's representative formed the Debtor LLC in 2019 after a career as an educator and school principal. Initially, the Debtor operated as a small remodeling business. In 2021 the Debtor saw an opportunity to expand its business.

1

To that end, it's representative, Mr. Johnson, formed another LLC (Northstarr Holdings LLC) to purchase and use as its business headquarters, a building in Burton, Michigan. Thereafter he formed another LLC, Buffalo Johnson LLC to operate a kitchen and bath store on real estate that Buffalo Johnson purchased on Corunna Road in Flint, Michigan. The idea behind the Buffalo Johnson formation was to sell kitchen and bath packages and then have the Debtor complete the work. While in theory this was a great idea, it resulted in many problems:

1. The Debtor needed to hire many new employees quickly. Finding quality workers proved difficult.

2. The Debtor needed to entrust many of these employees with estimating and bidding new jobs.

3. Marty Johnson lost control of the business, lost control of the individual jobs and therefore lost control of money coming in and money going out. With this loss of control the Debtor went out of trust on certain of its jobs and was unable to complete jobs for which it had contracted. Faced with mounting losses, with little cash on hand and threats from customers the Debtor was forced to file this case.

**C. <u>Post Petition Litigation</u>**

Post petition certain things have happened which have impacted the Debtor and impact this plan:

1. The Debtor filed its first day motions for use of cash collateral and for the payment of wages. These motions were approved by the Court after extensive litigation with the United States Trustee and SubChapter V Trustee Kimberly Clayson.

2

2. The Debtor as well retained the undersigned counsel.

**D.  Post Petition Activity**

1. The Debtor has been profitable post petition.

2. The Debtor has downsized its business reducing its work force from in excess of 20 workers to 4 1099 employees total.  The Debtor's representative also sold the business location in Burton and closed the Buffalo Johnson operation. The Debtor has limited its business to smaller jobs and has set up safe guards to guarantee that funds  are available to complete each job timely and on budget.

**E.  Post Petition Financial Performance**

As indicated above, post petition the Debtor has taken steps to improve its bottom line and to change its business model.  These changes support the financial projections prepared by the Debtor and attached to this plan. These changes have also resulted in profitability for the Debtor post petition as is reflected in the weekly operating reports filed with the Court.

**F.  Liquidation Analysis.**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**. In a liquidation, Debtors estimate a total of zero would be available to general unsecured creditors after deductions for liquidation costs, trustee fees and costs as well as secured

3

claims. The Debtor is offering a $10,000 dividend to its general unsecured creditors over the life of the plan; a $10,000 increase over what they would see should the case convert to Chapter 7.

### G.  Financial Projection

The Debtor has provided projected financial projections as **Exhibit "B"**.

The Debtors financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) in an amount sufficient to meet the requirements of this Plan.

## ARTICLE 1 SUMMARY OF CLAIMS AND CLASSES

**This Plan provides for the following classes and claims:**

**Group 1:** Estimated Administrative Expense claims pursuant to 11 U.S.C.

| | |
|---|---|
| §507: Subchapter V Trustee fees: | $15,000 |
| Debtor's Chapter 11 counsel fees + expenses: | $40,000 |
| Less Retainer Deposit: | ($5772) |
| Estimated Admin Expenses Due from Debtor: | $49,228 |

**Class 1:  Priority Claim of the Internal Revenue Service/State of Michigan**

The IRS holds a priority claim in the amount of $20,217 per the claim it filed with the Court on February 19, 2025.  The balance of its claim in the amount of $36,551 is a general unsecured claim.   The State of Michigan holds an estimated priority claim of $10,111. The State has not filed a claim.

4

**Class 2:  Secured Claim of Ford Motor Credit (FMCC)**

FMCC holds a claim in the amount of $33,206.  The claim is secured by first lien on a

2019 Ford with a value of $20,000.  This creditor is not fully secured.

**Class 3:  Sheffield Financial**

Sheffield Financial holds a claim in the amount of $10,312.  The claim is

secured by an excavator with a value of $6000.  This creditor is not fully

secured.

**Class 4:  Secured claim of Small Business Administration (SBA)**

SBA holds a claim in the amount of $384,506.  The claim of SBA is secured by

a blanket lien on the assets of the Debtor with a value of $40,750.  The SBA is not fully

secured.

**Class 5:  Secured Claim of Delange Financial**

Delange Financial is a creditor of the debt owed $34,602.  The claim is secured by a lift

with a value of $10,000.  This creditor is not fully secured.

**Class 6:  Secured Claim of Santander/Chrysler Corporation**

Santander is a creditor with a debt of $5399.  The debt is secured by a 2017 Kia Sorrento

with a value of $5399.  This claim is fully secured.

**Class 7:  Executory Contracts/Potential Builders Trust Fund Act Claim Holders**

This claim consists of those former customers of the debtor who may hold valid Builders Trust

Fund Act Claims.  Per the Debtor's records these claims total $338,544.

**Class 8: Unsecured Creditors**

This class consists of those creditors listed on Schedule F who have not filed claims, the unsecured portions of those creditors who have secured claims and those creditors who have filed unsecured claims excluding those claims as described in Class 7. The total amount of unsecured debt totals $544,418.

## ARTICLE 2 TREATMENT OF CLASSES OF CLAIMS

### Group 1 Administrative Expense claims pursuant to 11 U.S.C. §507

This class is Impaired.

Subchapter V Trustee fees of approximately $15,000

Debtor's Chapter 11 Counsel of approximately $34,228 (net of retainer)

The Debtor will pay the claim of counsel on a pro rata basis (with that of Subchapter V Trustee, Kimberly Clayson) out of the escrow account set up by the Debtor per the Final Cash Collateral Order entered March 5, 2025. If there are insufficient funds to pay the legal fees, the balance will be paid at the rate of $1000 per month until paid in full. The claim of the Subchapter V Trustee, Kimberly Clayson will be paid in full on a pro rata basis out of the same escrow account set up by the Debtor per the Final Cash Collateral Order entered March 5, 2025. If there are insufficient funds to pay the fees the balance will be paid in monthly installments of $1000 until paid in full. Administrative expenses are estimated based on the Debtor's legal fees of bankruptcy counsel and the Subchapter V Trustee through the Debtor's confirmation hearing and post confirmation pre-case closing

services. This proposed distribution is subject to increase if the Debtor incurs additional

administrative expenses including but not limited to expert witness expenses, additional

attorney fees to promote confirmation of a contested plan and additional Subchapter V

Trustee fees necessary to promote confirmation of this plan and/or to mediate plan

confirmation by consent. Any increase in administrative expenses will be paid from the

amounts the Debtor estimates for disbursement to Class 8 general unsecured

creditors. Should it be determined that the Debtor has over estimated its administrative

expenses any access shall be paid to general unsecured creditors as an additional

dividend.

### Class 1: Priority Claim of the Internal Revenue Service/State of Michigan

This class is not impaired as the treatment of the claims of the IRS and the State of

Michigan are within the parameters of the code. The IRS will be paid over 48 months

at 7% with the first payment of $485 due 90 days from the date of the Order Confirming

Plan. The State of Michigan will be paid over 48 months at 7% with the first payment of

$281 due 90 days from the date of the Order Confirming Plan.

### Class 2: Ford Motor Credit

This class is impaired. The secured claim Ford Motor Credit in the amount of $20,000

shall be paid $518 per month at 7% with the first payment due 90 days from confirmation.

The balance of its claim shall be treated as a general unsecured claim. FMCC shall retain

its lien.

**Class 3:  Sheffield Financial**

The secured claim of Sheffield Financial in the amount of $6000 shall bear interest at 7% and be paid over a five (5) year period with the first payment of $129.00 due  90 days from confirmation.  The balance of the claim shall be treated as a general unsecured claim. This creditor shall retain its lien.  This class is impaired.

**Class 4:  Small Business Administration (SBA)**

The secured claim of the SBA in the amount of $40,750 shall bear interest at 7% and be paid over a five (5) year period with the first payment of $807 due 90  days from confirmation.  The balance of the total claim of the SBA shall be treated as a general unsecured claim.  This creditor shall retain its liens.  This class is impaired.

 **Class 5:  Delange Financial**

The secured claim of Delange Financial in the amount of $10,000 shall bear interest at 7% and be paid over a five year period in monthly installments of $198.00 with the first payment due 90 days from confirmation.  The balance of the total claim of Delange shall be treated as a general unsecured claim.  This class is impaired.

### Class 6:   Santander/Chrylser Corporation

The secured claim of Santander in the amount of $5399 shall bear interest at 7% and be paid over a 48 month period in monthly installments of $150 with the first payment due 90 days from confirmation.  This class is impaired.

**Class 7: Executory Contracts/Potential Builders Trust Fund Act Claim Holders**

This class is impaired. These creditors, who claims total $338,504 per the Debtor, will share the sum of $85,000 total over the life of the plan for a total distribution of 25.1% of their claims. These payments will be paid in 48 monthly payments with the first payment in the amount of $1771 due 12 months from confirmation.

**Class 8: <u>Allowed Unsecured Creditors</u>**

This Class is impaired. General unsecured claims:   $422,428

Unsecured creditors shall share in sum total of $10,000 over the life of the plan.

These funds shall be paid monthly with the first of 48 monthly payments of $209 due 12 months from confirmation with each creditor paid on a prorata basis.

## ARTICLE 3 ALLOWANCE AND DISALLOWANCE OF CLAIMS

a. **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

b. **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 4 EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor rejects all of the executory contracts with each of the executory contract holders. These include executory contract with Alison Johnson, Amanda Lewis, Beth & Josh Bodetker, Bob Strum, Brian Martin, Carmalita Lewis, David & Angela Phillipart, Eric Tiffan, Gary Drinan, John Baluci, Kristee Mitchell, Laura Eyles, Melissa & Rick Smearman, Sabin & Regina Blake, Sharon Lapham, Shelter of Flint, and Susan Tons. The claims of these creditors are provided for in class 7.

## ARTICLE 5 DISCHARGE

On the confirmation date of this Plan, if deemed consensual confirmation, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (a) imposed by this Plan; (b) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (c) of a kind specified in § 1141(d)(6)(B). In the event that this Plan is confirmed as a non-consensual plan, Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code upon payment in full of the sums required under this Plan and application to the Court.

10

## ARTICLE 6 PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## ARTICLE 7 RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

# ARTICLE 8 LIQUIDATION ANALYSIS

The Debtor's Liquidation Analysis is attached as **Exhibit "A"**. The Debtor believes unsecured creditors would receive no dividend upon liquidation and Chapter 7 and Chapter 11 administrative expense claims and after the payment of secured claims. and priority claims. The Debtor proposes payment of $10,000 to unsecured creditors; a $10,000 improvement over what Debtor estimates recovery would be in a Chapter 7. All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of its assets, except where noted to the contrary. In establishing the values, Debtor has considered the size, age, physical condition and location of the assets.

12

## ARTICLE 9 PLAN IMPLEMENTATION

a. **Plan projections**.  The Debtor has attached as **Exhibit "B"**, its summary of post-confirmation financial projections for the life of the Plan. These projections are based on:

1. The Debtor's post petition performance.
2. The changes to its business made by the Debtor.
3. The Debtor's knowledge of the industry and this market.

**b. Voting and Acceptance of the Plan.**

b.1 Debtor will only count ballots timely returned by impaired creditors.

b.2  If Debtor receives votes in an impaired creditor class, the plan shall be deemed accepted and confirmed by consent of the creditors if the ballots received in favor of the plan comprise a simple majority and two-thirds in dollar amount.

b.3 If no ballots are received or if an insufficient number of creditors vote in favor of the plan the Debtor may confirm the plan as a nonconsensual plan.

**c.   Exemption from Certain Transfer Taxes and Recording Fees.** To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfer from a Debtor to any entity under, pursuant to, in contemplation of, or in connection with the Plan or through: (a) the issuance, distribution, transfer or exchange of any debt, securities or other interest in the Debtor; (b) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by

13

such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

d. **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

14

e. **Confirmation**

a.1. If the Plan is confirmed under section ll9l(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Consummation of the Plan at which point her services shall terminate.

a.2. If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until the Trustee has performed such duties as are described in sections 1183 and 1194(b) and such other duties as she may have been assigned by the Bankruptcy Court prior to the Effective Date.

f. **Pre-Effective Date Injunctions or Stays.** All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

g. **Avoidance Actions.** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor. The Debtor does not at this time anticipate the filing of any avoidance action, though the Debtor through counsel is working with PayPal to cease ongoing violations of the automatic stay. If the violations continue an appropriate motion may be filed.

h. **Preference.** As of the date of the filing of this plan the Debtor does not have any preference action.

i. **Change of Address.** In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor or Subchapter V Trustee, as applicable, of any change in address.

Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court. If the payment is not negotiated within three (3) months after being mailed, it shall be void and the Reorganized Debtor shall have no further obligation to such Creditor.

j. **Vesting of Property.** Title to all property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan. In the event this case is converted to a Chapter 7, all property of the Debtor and reorganized debtor will revest in the estate.

k. **Monthly Reports.** The Debtor will remain responsible for filing timely Monthly Operating Reports until this case is confirmed, dismissed or converted to Chapter 7.

l. **Compromise of Litigation.** The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action) available to the Debtor, the Estate, the Debtor-in- Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

## ARTICLE 10 MISCELLANEOUS PROVISIONS

a. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

b. **Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

**Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

17

c. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

d. **Appendices.** The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

e. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

f. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michigan govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

g. **Corporate Governance.** Not applicable where this is an individual debtor.

h. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

i. **Confirmation Order Controls.** In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

j. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the

State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

k. **Incorporation of Exhibits.** All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. All Exhibits may be revised prior to the Effective Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

l. **Modifications to the Plan.** The Debtor may amend or modify the Plan and any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules or any applicable court order. The Debtor expressly reserves its rights to alter, amend or modify materially the Plan, one or more times, after Confirmation,

19

as provided by section 1193 of the Bankruptcy Code, and, to the extent
necessary, may initiate proceedings in the Bankruptcy Court to so alter,
amend, or modify the Plan, or remedy any defect or omission, or reconcile
any inconsistencies in the Plan or the Confirmation Order, in such matters as
may be necessary to carry out the purposes and intent of the Plan. A Holder
of a Claim or Equity Interest that has accepted the Plan shall be deemed to
have accepted the Plan, as altered, amended, modified or supplemented, if
the proposed alteration, amendment, modification or supplement does not
materially and adversely change the treatment of the Claim or Equity Interest
of such Holder.

m. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from
exercising, or declines to exercise, jurisdiction or is otherwise without
jurisdiction over any matter arising out of the Plan or in this Subchapter V
Case, such abstention, refusal or failure of jurisdiction shall have no effect
upon and shall not control, prohibit, or limit the exercise of jurisdiction by
any other court having competent jurisdiction with respect to such matter.

n. **Notice.** All notices, requests and demands to or upon the Debtor to be
effective shall be in writing and, unless otherwise expressly provided herein,
shall be deemed to have been duly given or made when actually delivered

20

or, in the case of notice by electronic transmission, when received and telephonically confirmed.

o. **Reservation of Rights.** The filing of the Plan, any statement or provision contained in the Plan, or the talcing of any action by the Debtor with respect to the Plan, shall not be deemed to be an admission or waiver of any rights of the Debtor with respect to any Holders of Claims against or Equity interests in the Debtor.

q. **No Waiver.** Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or its respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a)

object to or examine such Claim, Administrative Claim or Equity Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim or Equity Interest.

r. **Release of Liens.** The Debtor, Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgages, releases or terminations.

s. **Set offs and Counter claims.** No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to set off a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract. Unless expressly asserted in this Subchapter V Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan.

22

t. **11 U.S.C. §1129 (a)(5) Provision-** The Debtor's insider is Marty Johnson. The total gross pay for Marty Johnson shall not exceed $70,000 for any given year over the life of the plan.

u. **1191 (c)(3) Provision-** For purposes of satisfying the obligation of the Debtor under section 1191 (c)(3) the Debtor proposes the following remedies to creditors.

1. Should the Debtor default in the payment to a creditor, that creditor shall have the right to make a written demand of the Debtor outlining the nature and amount of the default by notifying the Debtor and Debtor's counsel. The Debtor shall have 30 days to cure the default or make other mutually agreeable arrangements with the Debtor. Should the Debtor not cure the default, the affected creditor shall have the right to seek to reopen the case to seek appropriate remedies; or

2. Should the Debtor default in the payment to a creditor, that creditor shall have the right to make a written demand of the Debtor outlining the nature and amount of the default by notifying the Debtor and Debtor's counsel. The Debtor shall have 30 days to cure the default or make other mutually agreeable arrangements with the Debtor. Should the Debtor not cure the default the affected creditor shall have the right to seek remedies in State Court.

WHEREFORE the Debtor prays for entry of an order confirming this plan.

Respectfully submitted,

Dated: 4/3/25

/s/ George E. Jacobs
George E. Jacobs (P36888)
2425 S. Linden Rd., Ste. C
Flint, MI 48532
(810) 720-4333
george@bklawoffice.com

**EXHIBIT A**

LIQUIDATION ANALYSIS

A.  Introduction

Under the "best interests of creditors" test set· forth in section l 129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest, who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtor has prepared the following hypothetical Liquidation Analysis. The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of the Debtor's assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement.

B.  **Scope, Intent, and Purpose of the Liquidation Analysis**

The determination of the costs of and hypothetical proceeds from the liquidation of the Debtor's assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business,

economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

**NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

B.  Notes Applicable to the Liquidation Analysis

1.Appointment of a Chapter 7 Trustee

Pursuant to II U.S.C. §1129(a)(7)(A)(ii), the liquidation value, for purposes of the "best interest of creditors" assessment, is to be made as of the

effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding its asset and liability base will not have significantly changed.

2. Liquidation Value

For the Debtor's interest in personal property, the liquidation values take into account the presumed costs of sale, including sales broker fees of 6 percent for real estate if applicable. Deductions are made following the liquidation chart for Chapter 7 Trustee statutory fees, and an estimate for the fees of the Trustee's professionals. The Debtor did not take into account the value of potential avoidance actions, as the Debtor does not anticipate pursuing any potential avoidance actions. The Debtor does not anticipate pursuing any potential avoidance actions due to the fact that the Debtor believes the defendants would have ordinary course and new value defenses. The Debtor's plan projections and liquidation analysis demonstrate the Debtor's ability to pay unsecured creditors in full over the term of the plan, making the pursuit of avoidance actions unnecessary.

3. Chapter 7 Trustee Fee

It is assumed that a Trustee will receive the sum of the proceeds as set

forth under the liquidation value. The limitations on the Chapter 7 trustee's fees are contained in 11 U.S.C. §326. For purposes of the Liquidation Analysis, the chapter 7 trustee's fees are calculated using the limitations of Section 326 of the Bankruptcy Code and are based upon equity in the property.

# LIQUIDATION ANALYSIS

| Type of Property | Fair market Value | Lien | Equity |
|---|---|---|---|
| Vehicles | 23,599 | 39,500 | 0 |
| Cash | 3900 | 0 | 3900 |
| Accounts receivable | 5000 | *384,506 | 0 |
| Inventory | 2500 | *384,506 | 0 |
| office equipment | 2500 | *384,506 | 0 |
| M&E | 49,700 | *384,506 | 0 |

NET RECOVERY TO CHAPTER 7 TRUSTEE       $3900

LESS CH. 7 TRUSTEE ADMINISTRATION FEES   ($1000)

PRIORITY CLAIMS                         ($30,328)

LESS CHAPTER 11 ADMINISTRATION EXPENSE ($44,728)

NET TO UNSECURED CREDITORS              $0.00

*blanket lien of SBA

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION**

In re: Northstarr Builders, LLC

                                    Case No. 24-32419
                                      Chapter 11
                                      Hon. Joel D. Applebaum

      Debtor.
_____/

**ORDER ESTABLISHING DEADLINES AND PROCEDURES IN THE
CASE OF A SMALL BUSINESS DEBTORS WHO HAVE ELECTED TO
HAVE SUBCHAPTER V OF CHAPTER 11 APPLY**

After reviewing the schedules and statement of financial affairs and consulting with Debtor and the other parties who appeared at the initial status conference, the Court concludes that this case is appropriate for the procedures set forth in this order, and establishes the following deadlines, hearing dates and procedures. The purpose of this order is to expedite Debtor's reorganization and to secure "the just, speedy, and inexpensive determination of [this] case . . . ." Fed. R. Bankr. P. 1001.

**1. Deadlines and Hearing Dates.** The following deadlines and hearing dates are established:

    **a.** The deadline for Debtor to file motions under ¶ 4 below is **February 14, 2025.** This is also the deadline to file all unfiled overdue tax returns. The case will not be delayed due to unfiled tax returns.

    **b.** The Court will hold the status conference required under 11 U.S.C. § 1188(a) on **February 12, 2025 at 11:00 a.m.** (ET) in courtroom of the United States Bankruptcy Court, 226 West Second Street, Flint, Michigan 48502. Debtor, Debtor's attorney, and the Trustee must appear at the status conference. The United States Trustee and creditors are invited, but not required to attend.

    **c.** **No later than January 29, 2025.** Debtor must file with the Court and serve on the Trustee and all parties in interest, the report required by 11 U.S.C. § 1188(c).

    **d.** Under 11 U.S.C. § 1189(b), the deadline for Debtor to file a plan (see ¶ 2 below) **March 24, 2025.** Immediately after filing the plan, Debtor must serve the plan, a ballot as appropriate, and this Order on the Trustee, the United States Trustee, all creditors, all equity security holders, and all other parties who have requested service, and Debtor must promptly file proof of such service.

**e.** The deadline to return ballots on the plan, as well as to file objections to confirmation of the plan, is **April 28, 2025.** This is also the deadline for holders of claims and interests to accept or reject the plan and the date by which an equity security holder or creditor whose claim is based on a security must be the holder of record of the security in order to be eligible to accept or reject the plan. The completed ballot form must be returned by mail to Debtor's attorney: George E. Jacobs, 2425 S. Linden Road, Ste. C, Flint, Michigan.

**f.** The Court fixes **March 21, 2025** as the deadline for any creditor to make an election of application of 11 U.S.C. § 1111(b)(2).

**g.** No later than **May 7, 2025** Debtor must file a signed ballot summary indicating the ballot count under 11 U.S.C. § 1126(c) & (d). A copy of all ballots must be attached to this summary.

**h.** The hearing on confirmation of the plan will be held on **May 14, 2025 at 11:00 a.m.**, in Courtroom of the United States Bankruptcy Court, 226 West Second Street, Flint, Michigan 48502. The hearing will be in person. If the plan is a consensual plan the hearing may be held by telephone.

**i.** The deadline for all professionals to file final fee applications (see ¶ 5 below) is 30 days after the confirmation order is entered.

**j.** The deadline to file objections to this Order (see ¶ 6 below) is 21 days after this Order is entered.

**k.** The deadline for Debtor to file a motion to extend the deadline to file a plan (see ¶ 8 below) is **February 14, 2025.**

**l.** The deadline to file a motion to extend the time to file a motion to assume or reject a lease under 11 U.S.C. § 365(d)(4) is **February 13, 2025.** Hearings on any motions to assume or reject a lease or executory contract will be held on **March 12, 2025 at 9:30 a.m.**

**m.** These dates and deadlines are subject to change upon notice if Debtor files a plan before the deadline in paragraph d above.

**2. The Plan.** Debtor must begin to negotiate the terms of a plan of reorganization as soon as practicable. By the deadline established in paragraph 1d, Debtor must file a plan of reorganization. If Debtor fails to meet this deadline, the case may be dismissed or converted to chapter 7 pursuant to 11 U.S.C. §1112(b)(4).

**3. The Confirmation Hearing.** Parties may file objections to confirmation of the plan by the deadline established in paragraph 1e above. Objections must be served on the attorney for Debtor, the Trustee, and the United States Trustee. A proof of such servic e must be filed with the objections. Objections which are not timely filed and served will be deemed waived.

4. **Expediting Debtor's Reorganization.** If necessary to file a plan by the deadline established in this order, Debtor must file any motions or requests to value security pursuant to L.B.R. 9014-1 by the deadline established in paragraph 1a above.

5. **Fee Applications.** Unless the Court orders otherwise, each professional may file one and only one final fee application. Such applications must be filed under L.B.R. 2016-1 and L.B.R. 9014-1 by the deadline set forth in paragraph 1i, above.

6. **Deadline to File Objections to this Order.** Any objection to this order must be filed by the deadline set forth in paragraph 1j, above. Objections not timely filed are waived.

7. **Motions to Allow Administrative Expense.** Taxing authorities may file a request for payment of an administrative expense at any time under 11 U.S.C. § 503(a). Any request for an order allowing any such administrative expense, under 11 U.S.C. § 503(b), must be made under L.B.R. 9014-1.

8. **Motions to Extend the Deadline to File a Plan.** Any motion to extend the deadline to file a plan must be filed by the deadline in paragraph 1k. The motion must demonstrate by affidavit or otherwise that the deadline extension is needed, and that the need for the deadline extension is attributable to circumstances for which Debtor should not justly be held accountable. *See* 11 U.S.C. § 1189(b). The Court may schedule a hearing. Counsel for Debtor must serve the motion and any notice of the hearing on the Trustee, the United States Trustee, all secured creditors, and the 20 largest unsecured creditors, and must file a proof of service.

Signed on January 29, 2025



/s/ Joel D. Applebaum
_____
**Joel D. Applebaum**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

In Re: Northstarr Builders, LLC

Case no.  24-32419
Ch.       11
Judge:    Joel D. Applebaum

    Debtor.

_____/

## CLASS [  ] BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION

**Bankruptcy Law Office filed a First Amended Plan of Reorganization dated  4/3/2025 (the "Plan") for the Debtor in this case.**

**You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Bankruptcy Law Office, 2425 S. Linden Rd., Ste. C, Flint, MI 48532, on or before 4/28/2025, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

### ACCEPTANCE OR REJECTION OF THE PLAN

*(Check one box only)*

[  ]  ACCEPTS THE PLAN                       [  ] REJECTS THE PLAN

Dated:_____

Print or type name:_____

Signature:_____

Address: _____

                  _____
                  _____
                  _____

RETURN THIS BALLOT TO:
Bankruptcy Law Office
George E. Jacobs
2425 S. Linden Rd., Ste. C
Flint, MI 48532

# NORTHSTARR BUILDERS, LLC

**PROJECTIONS OF INCOME**

Jun-25

|  | Jun-25 |
|---|---|
| **INCOME** | |
| GROSS RECEIPTS | 30,000.00 |
| COST OF GOODS SOLD | 9,000.00 |
| **TOTAL GROSS INCOME:** | **$21,500.00** |
| **EXPENSES** | |
| WAGES | 12,500.00 |
| MISCELLANEOUS | 1,000.00 |
| VEHICLE / FUEL | 500.00 |
| EQUIPMENT RENT | 100.00 |
| MAINTENANCE & REPAIRS | 100.00 |
| INSURANCE | 750.00 |
| BANK CHARGES | 50.00 |
| SUPPLIES | 150.00 |
| ADVERTISING | 100.00 |
| TELEPHONE | 250.00 |
| CREDIT CARD EXPENSE | 100.00 |
| **NET EXPENSES:** | **$15,600.00** |
| **NET PROFIT:** | **$5,900.00** |
| **PLAN PAYMENT:** | **$2,000.00** |
| **END OF MONTH CASH ON HAND:** | **$3,900.00** |

# EXHIBIT B

**NORTHSTARR BUILDERS, INC.**

PROJECTIONS OF INCOME

JULY 2025 - DECEMBER 2025

| | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| COST OF GOODS SOLD | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 |
| **TOTAL GROSS INCOME:** | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 |
| **EXPENSES** | | | | | | |
| WAGES | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| VEHICLE / FUEL | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| EQUIPMENT RENT | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MAINTENANCE & REPAIRS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| INSURANCE | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| BANK CHARGES | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| SUPPLIES | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| ADVERTISING | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| TELEPHONE | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| CREDIT CARD EXPENSE | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| **NET EXPENSES:** | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 |
| **NET PROFIT:** | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 |
| **PLAN PAYMENT:** | $2,000.00 | $4,568.00 | $4,568.00 | $4,568.00 | $4,568.00 | $4,568.00 |
| **END OF MONTH CASH ON HAND:** | $7,300.00 | $8,132.00 | $8,964.00 | $9,796.00 | $10,628.00 | $11,460.00 |

**EXHIBIT B**

## NORTHSTARR BUILDERS, INC.
### PROJECTIONS OF INCOME
### JANUARY 2026 - JUNE 2026

| | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 |
| COST OF GOODS SOLD | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| **TOTAL GROSS INCOME:** | $22,500.00 | $22,500.00 | $22,500.00 | $22,500.00 | $22,500.00 | $22,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| MISCELLANEOUS | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| VEHICLE / FUEL | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| EQUIPMENT RENT | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| MAINTENANCE & REPAIRS | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| INSURANCE | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 |
| BANK CHARGES | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 |
| SUPPLIES | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| ADVERTISING | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| TELEPHONE | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| CREDIT CARD EXPENSE | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| **NET EXPENSES:** | $16,225.00 | $16,225.00 | $16,225.00 | $16,225.00 | $16,225.00 | $16,225.00 |
| **NET PROFIT:** | $4,568.00 | $4,568.00 | $4,568.00 | $4,568.00 | $4,568.00 | $5,548.00 |
| **PLAN PAYMENT:** | $5,886.00 | $5,886.00 | $5,886.00 | $4,886.00 | $6,448.00 | $4,886.00 |
| **END OF MONTH CASH ON HAND:** | $10,142.00 | $8,824.00 | $7,506.00 | $7,188.00 | $5,308.00 | $5,970.00 |

## EXHIBIT B

**NORTHSTARR BUILDERS, INC.**
**PROJECTIONS OF INCOME**
**JULY 2026 - DECEMBER 2026**

| | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 |
| COST OF GOODS SOLD | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| **TOTAL GROSS INCOME:** | $22,500.00 | $22,500.00 | $22,500.00 | $22,500.00 | $22,500.00 | $22,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 |
| MISCELLANEOUS | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| VEHICLE / FUEL | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| EQUIPMENT RENT | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| MAINTENANCE & REPAIRS | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| INSURANCE | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 |
| BANK CHARGES | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 |
| SUPPLIES | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| ADVERTISING | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| TELEPHONE | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| CREDIT CARD EXPENSE | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| **NET EXPENSES:** | $16,725.00 | $16,725.00 | $16,725.00 | $16,725.00 | $16,725.00 | $16,725.00 |
| **NET PROFIT:** | $5,775.00 | $5,775.00 | $5,775.00 | $5,775.00 | $5,775.00 | $5,775.00 |
| **PLAN PAYMENT:** | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 |
| **END OF MONTH CASH ON HAND:** | $6,197.00 | $6,424.00 | $6,651.00 | $6,878.00 | $7,105.00 | $7,332.00 |

**EXHIBIT B**

# NORTHSTARR BUILDERS, INC.
## PROJECTIONS OF INCOME
### JANUARY 2027 – JUNE 2027

| | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| COST OF GOODS SOLD | 11,500.00 | 11,500.00 | 11,500.00 | 11,500.00 | 11,500.00 | 11,500.00 |
| **TOTAL GROSS INCOME:** | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 |
| MISCELLANEOUS | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| VEHICLE / FUEL | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| EQUIPMENT RENT | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| MAINTENANCE & REPAIRS | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| INSURANCE | 950.00 | 950.00 | 950.00 | 950.00 | 950.00 | 950.00 |
| BANK CHARGES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| SUPPLIES | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| ADVERTISING | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| TELEPHONE | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| CREDIT CARD EXPENSE | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| **NET EXPENSES:** | $17,650.00 | $17,650.00 | $17,650.00 | $17,650.00 | $17,650.00 | $17,650.00 |
| **NET PROFIT:** | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 |
| **PLAN PAYMENT:** | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 |
| **END OF MONTH CASH ON HAND:** | $7,634.00 | $7,936.00 | $8,238.00 | $8,540.00 | $8,842.00 | $9,144.00 |

**EXHIBIT B**

**NORTHSTARR BUILDERS, INC.**
PROJECTIONS OF INCOME
JULY 2027 - DECEMBER 2027

| | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| COST OF GOODS SOLD | 11,500.00 | 11,500.00 | 11,500.00 | 11,500.00 | 11,500.00 | 11,500.00 |
| **TOTAL GROSS INCOME:** | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 | $23,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 | 13,750.00 |
| MISCELLANEOUS | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| VEHICLE / FUEL | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| EQUIPMENT RENT | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| MAINTENANCE & REPAIRS | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| INSURANCE | 950.00 | 950.00 | 950.00 | 950.00 | 950.00 | 950.00 |
| BANK CHARGES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| SUPPLIES | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| ADVERTISING | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| TELEPHONE | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| CREDIT CARD EXPENSE | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| **NET EXPENSES:** | $17,650.00 | $17,650.00 | $17,650.00 | $17,650.00 | $17,650.00 | $17,650.00 |
| **NET PROFIT:** | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 |
| **PLAN PAYMENT:** | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 |
| **END OF MONTH CASH ON HAND:** | $9,446.00 | $9,748.00 | $10,050.00 | $10,352.00 | $10,654.00 | $10,956.00 |

**EXHIBIT B**

**NORTHSTARR BUILDERS, INC.**
**PROJECTIONS OF INCOME**
**JANUARY 2028 - JUNE 2028**

| | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 |
| COST OF GOODS SOLD | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| **TOTAL GROSS INCOME:** | $24,500.00 | $24,500.00 | $24,500.00 | $24,500.00 | $24,500.00 | $24,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 14,500.00 | 14,500.00 | 14,500.00 | 14,500.00 | 14,500.00 | 14,500.00 |
| MISCELLANEOUS | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| VEHICLE / FUEL | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| EQUIPMENT RENT | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| MAINTENANCE & REPAIRS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| INSURANCE | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK CHARGES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| SUPPLIES | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| ADVERTISING | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| TELEPHONE | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| CREDIT CARD EXPENSE | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| **NET EXPENSES:** | $18,650.00 | $18,650.00 | $18,650.00 | $18,650.00 | $18,650.00 | $18,650.00 |
| **NET PROFIT:** | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 | $5,850.00 |
| **PLAN PAYMENT:** | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $5,548.00 | $4,548.00 |
| **END OF MONTH CASH ON HAND:** | $11,258.00 | $11,560.00 | $11,862.00 | $12,164.00 | $12,466.00 | $13,768.00 |

**EXHIBIT B**

**NORTHSTARR BUILDERS, INC.**

PROJECTIONS OF INCOME

JULY 2028 - DECEMBER 2028

| | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 | 37,500.00 |
| COST OF GOODS SOLD | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| **TOTAL GROSS INCOME:** | $24,500.00 | $24,500.00 | $24,500.00 | $24,500.00 | $24,500.00 | $24,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 16,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| MISCELLANEOUS | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| VEHICLE / FUEL | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| EQUIPMENT RENT | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| MAINTENANCE & REPAIRS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| INSURANCE | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK CHARGES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| SUPPLIES | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| ADVERTISING | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| TELEPHONE | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| CREDIT CARD EXPENSE | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| **NET EXPENSES:** | $20,150.00 | $19,150.00 | $19,150.00 | $19,150.00 | $19,150.00 | $19,150.00 |
| **NET PROFIT:** | $4,350.00 | $5,350.00 | $5,350.00 | $5,350.00 | $5,350.00 | $5,350.00 |
| **PLAN PAYMENT:** | $4,548.00 | $4,548.00 | $4,548.00 | $4,548.00 | $4,548.00 | $4,548.00 |
| **END OF MONTH CASH ON HAND:** | $13,570.00 | $14,372.00 | $15,174.00 | $15,976.00 | $16,778.00 | $17,580.00 |

**EXHIBIT B**

**NORTHSTARR BUILDERS, INC.**
PROJECTIONS OF INCOME
JANUARY 2029 - JUNE 2029

| | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 |
| COST OF GOODS SOLD | 14,000.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 |
| **TOTAL GROSS INCOME:** | $25,000.00 | $25,500.00 | $25,500.00 | $25,500.00 | $25,500.00 | $25,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 |
| MISCELLANEOUS | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| VEHICLE / FUEL | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| EQUIPMENT RENT | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 800.00 |
| MAINTENANCE & REPAIRS | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| BANK CHARGES | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| SUPPLIES | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| ADVERTISING | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| TELEPHONE | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 |
| CREDIT CARD EXPENSE | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| **NET EXPENSES:** | $20,535.00 | $20,535.00 | $20,535.00 | $20,535.00 | $20,535.00 | $20,535.00 |
| **NET PROFIT:** | $4,465.00 | $4,965.00 | $4,965.00 | $4,965.00 | $4,965.00 | $4,965.00 |
| **PLAN PAYMENT:** | $4,548.00 | $4,548.00 | $4,548.00 | $4,548.00 | $4,548.00 | $4,548.00 |
| **END OF MONTH CASH ON HAND:** | $17,497.00 | $17,914.00 | $18,331.00 | $18,748.00 | $19,165.00 | $19,582.00 |

**EXHIBIT B**

## NORTHSTARR BUILDERS, INC.
### PROJECTIONS OF INCOME
### JULY 2029 - DECEMBER 2029

| | Jul-29 | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 |
| COST OF GOODS SOLD | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 |
| **TOTAL GROSS INCOME:** | $25,500.00 | $25,500.00 | $25,500.00 | $25,500.00 | $25,500.00 | $25,500.00 |
| **EXPENSES** | | | | | | |
| WAGES | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 | 17,000.00 |
| MISCELLANEOUS | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| VEHICLE / FUEL | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| EQUIPMENT RENT | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| MAINTENANCE & REPAIRS | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| BANK CHARGES | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| SUPPLIES | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| ADVERTISING | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| TELEPHONE | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 |
| CREDIT CARD EXPENSE | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| **NET EXPENSES:** | $21,035.00 | $21,035.00 | $21,035.00 | $21,035.00 | $21,035.00 | $21,035.00 |
| **NET PROFIT:** | $4,465.00 | $4,465.00 | $4,465.00 | $4,465.00 | $4,465.00 | $4,465.00 |
| **PLAN PAYMENT:** | $4,548.00 | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 |
| **END OF MONTH CASH ON HAND:** | $19,499.00 | $20,182.00 | $20,865.00 | $21,548.00 | $22,231.00 | $22,914.00 |

## EXHIBIT B

# NORTHSTARR BUILDERS, INC.

### PROJECTIONS OF INCOME

#### JANUARY 2030 - JUNE 2030

| | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 |
| COST OF GOODS SOLD | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 |
| **TOTAL GROSS INCOME:** | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| **EXPENSES** | | | | | | |
| WAGES | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 |
| MISCELLANEOUS | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| VEHICLE / FUEL | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| EQUIPMENT RENT | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| MAINTENANCE & REPAIRS | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| BANK CHARGES | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| SUPPLIES | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| ADVERTISING | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| TELEPHONE | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 |
| CREDIT CARD EXPENSE | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| **NET EXPENSES:** | $23,035.00 | $23,035.00 | $23,035.00 | $23,035.00 | $23,035.00 | $23,035.00 |
| **NET PROFIT:** | $1,965.00 | $1,965.00 | $1,965.00 | $1,965.00 | $1,965.00 | $1,965.00 |
| **PLAN PAYMENT:** | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 |
| **END OF MONTH CASH ON HAND:** | $21,097.00 | $19,280.00 | $17,463.00 | $15,646.00 | $13,829.00 | $12,012.00 |

# EXHIBIT B

## NORTHSTARR BUILDERS, INC.
### PROJECTIONS OF INCOME
#### JULY 2030 - DEC 2030

| | Jul-30 | Aug-30 | Sep-30 | Oct-30 | Nov-30 | Dec-30 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS RECEIPTS | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 |
| COST OF GOODS SOLD | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 |
| **TOTAL GROSS INCOME:** | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| **EXPENSES** | | | | | | |
| WAGES | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 | 19,000.00 |
| MISCELLANEOUS | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| VEHICLE / FUEL | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| EQUIPMENT RENT | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| MAINTENANCE & REPAIRS | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| BANK CHARGES | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| SUPPLIES | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| ADVERTISING | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| TELEPHONE | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 |
| CREDIT CARD EXPENSE | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| **NET EXPENSES:** | $23,035.00 | $23,035.00 | $23,035.00 | $23,035.00 | $23,035.00 | $23,035.00 |
| **NET PROFIT:** | $1,965.00 | $1,965.00 | $1,965.00 | $1,965.00 | $1,965.00 | $1,965.00 |
| **PLAN PAYMENT:** | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 | $3,782.00 |
| **END OF MONTH CASH ON HAND:** | $10,195.00 | $8,378.00 | $6,561.00 | $4,744.00 | $2,927.00 | $1,110.00 |

## EXHIBIT B